PEOPLE *v.* YEAGER

CONSTITUTIONAL LAW—RIGHT TO PUBLIC TRIAL.

> Section 18 of Act No. 408, Local Acts 1893, authorizing the judge of the recorder's court of Detroit to exclude from the court room, upon the trial of any cause wherein evidence of licentious, lascivious, degrading, or peculiarly immoral acts will probably be given, all persons except those necessarily in attendance, is unconstitutional as applied to a criminal case, in that it violates the right of the accused to a public trial.[1]

Exceptions before judgment from recorder's court of Detroit; Chapin, J. Submitted May 11, 1897. Decided May 28, 1897.

Joseph H. Yeager was convicted of assault with intent to commit rape. Reversed.

*George F. Robison*, for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Henry A. Mandell*, Assistant Prosecuting Attorney, for the people.

MONTGOMERY, J. The defendant was convicted of assault with intent to commit rape, and the case is brought here for review on a single exception. After the

---

[1] Some other authorities on the right to public trial in a criminal case are found in a note to *People* v. *Murray*, 14 L. R. A. 809.

jury were sworn, the court excluded from the court room
all persons not legitimately interested in the case, but
announced that any friend or person that was connected
or related to or interested in the defendant himself was
not to be excluded; and, finally, in order to carry into
effect the order, the court asked all the people to retire
from the court room, and directed the officer in attend-
ance to admit any who were relatives or friends of the
defendant, and also permitted the representatives of the
press to remain, the court saying: "I don't propose to
have the court room filled up with people here to em-
barrass witnesses in this case." The final announce-
ment made by the court was: "I have told the officer
not to let anybody in here who is not either a friend of
the complaining witness or of the defendant. He will
ascertain that fact as they apply for admission. All such
people will be admitted, and the public will be kept out."
And the court directed the officer to see that that rule was
enforced. In making this order, the court acted under
the authority of Act No. 408, Local Acts 1893, § 18,
which provides:

"Whenever it shall appear that, upon the trial of any
cause, evidence of licentious, lascivious, degrading, or
peculiarly immoral acts or conduct will probably be
given, the judge presiding at such trial may, in his dis-
cretion, require and cause every person, except those
necessarily in attendance thereon, to retire and absent
himself or herself from the court room during such trial,
or any portion thereof."

Whether this statute is effective must depend upon
whether the trial provided for may be deemed a public
trial; for, if such a trial as is provided for by the statute
is not a public trial, the act is plainly in conflict with sec-
tion 28 of article 6 of the Constitution, which reads as
follows: "In every criminal prosecution, the accused
shall have the right to a speedy and public trial by an
impartial jury." This constitutional provision was under
consideration in the case of *People* v. *Murray*, 89 Mich.
276, 290 (28 Am. St. Rep. 294). In an elaborate opinion,

Mr. Justice CHAMPLIN, referring to the case of *People* v. *Kerrigan*, 73 Cal. 222, the case relied upon by the prosecution here, made use of the following language:

"I cannot accede to the correctness of the proposition intimated in that case,—that, if a public trial has not been accorded to the accused, the burden is upon him to show that actual injury has been suffered by a deprivation of his constitutional right. On the contrary, when he shows that his constitutional right has been violated, the law conclusively presumes that he has suffered an actual injury. I go further, and say that the whole body politic suffers an actual injury when a constitutional safeguard erected to protect the rights of citizens has been violated in the person of the humblest or meanest citizen of the State. The Constitution does not stop to inquire of what the person has been accused, or what crime he has perpetrated; but it accords to all, without question, a fair, impartial, and public trial. There is no such limitation in the Constitution nor in our statute above quoted from which it can be inferred that 'the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether.' Who is to decide who are the friends of the accused? The law makes no such test, but allows all citizens freely to attend upon any trial, whether civil or criminal. Instances have been referred to by Judge Cooley, in his work upon Constitutional Limitations (5th Ed., at page 380 [star page 312]), where, under certain circumstances, it might be proper to exclude a certain portion of the community from attending trials which would tend to degrade public morals, or would shock public decency, in which he says that at least the young should be excluded. There can be no objection to this, so long as citizens of the State who have arrived at the years of discretion and manhood are permitted to enter freely."

We are constrained to hold that the decision in that case rules the present, and that the order of the learned trial judge was unwarranted.

The conviction will be reversed, and a new trial ordered.

The other Justices concurred.